## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JON MITCHINER, | * | |
| 314 12th Street, NE | * | |
| Washington, D.C. 20002 | * | |
| | * | |
|     Plaintiff | * | |
| | * | |
| v. | * | Case No: |
| | * | COMPLAINT |
| FIDELITY BROKERAGE SERVICES LLC | * | JURY TRIAL DEMANDED |
| d/b/a FIDELITY INVESTMENTS | * | |
| 245 Summer Street MZ F7B | * | |
| Boston, Massachusetts 02210 | * | |
| | * | |
|     Registered Agent: | * | |
|     CT Corporation System | * | |
|     1015 15th Street, N.W., Ste. 1000 | * | |
|     Washington, D.C. 20005 | * | |
| | * | |
|     and | * | |
| | * | |
| FMR LLC d/b/a FIDELITY INVESTMENTS | * | |
| 245 Summer Street MZ F7B | * | |
| Boston, Massachusetts 02210 | * | |
| | * | |
|     Registered Agent: | * | |
|     CT Corporation System | * | |
|     155 Federal Street, Ste. 700 | * | |
|     Boston, Massachusetts 02110 | * | |
| | * | |
|     and | * | |
| | * | |
| NATIONAL FINANCIAL SERVICES LLC | * | |
| d/b/a FIDELITY INVESTMENTS | * | |
| 245 Summer Street MZ F7B | * | |
| Boston, Massachusetts 02210 | * | |
| | * | |
|     Registered Agent: | * | |
|     CT Corporation System | * | |
|     155 Federal Street, Ste. 700 | * | |
|     Boston, Massachusetts 02110 | * | |
| | * | |
|     Defendants. | * | |

## COMPLAINT

Plaintiff JON MITCHINER ("Mr. Mitchiner"), by and through his undersigned counsel, sues Defendants FIDELITY BROKERAGE SERVICES LLC d/b/a FIDELITY INVESTMENTS, FMR LLC d/b/a FIDELITY INVESTMENTS, NATIONAL FINANCIAL SERVICES LLC d/b/a FIDELITY INVESTMENTS ("Defendants"), and states:

## PRELIMINARY STATEMENT

1. Mr. Mitchiner, an individual who is deaf and a customer of Defendants, brings this action against Defendants alleging discrimination based on disability. Defendants discriminated against Mr. Mitchiner on multiple occasions by refusing to process Mr. Mitchiner's wire transfer over the phone and instead requiring him to physically go to an investor center to verify his identity because he is deaf. Defendants' conduct violates Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12181, *et seq.* and the District of Columbia Human Rights Law, § 2-1401.02 of the Code of District of Columbia. Mr. Mitchiner brings this Complaint to compel Defendants to cease unlawful discriminatory practices and implement policies and procedures that will ensure effective communication, full and equal access, and an equal opportunity to participate in and benefit from Defendant's banking and financial services. Mr. Mitchiner seeks declaratory and injunctive relief, compensatory damages, punitive damages, attorneys' fees, and costs.

## JURISDICTION

2. This Court has original jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343, and 1367.

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because (i) Defendants have sufficient contacts with this District to subject Defendants to personal

jurisdiction at the time this action is commenced; and (ii) the acts and omissions giving rise to this Complaint occurred within this District.

## PARTIES

4. Mr. Mitchiner resides at 314 12th Street NE, Washington, DC 20002. Mr. Mitchiner is deaf and substantially limited in the major life activity of hearing. He is a customer and investor of Defendants.

5. Defendant FMR LLC is the parent company of various Fidelity entities, including Defendant Fidelity Brokerage Services LLC and National Financial Services LLC.

6. Defendants FMR LLC, Fidelity Brokerage Services LLC, and National Financial Services LLC all do business as Fidelity Investments and are all headquartered at 245 Summer Street MZ F7B, Boston, Massachusetts 02210.

7. Defendants provide banking, investment management, and administration expertise to individual investors and comprise one of the largest mutual fund and financial services groups in the world. Defendants state their overarching goal to be making "financial expertise broadly accessible and effective in helping people live the lives they want." www.fidelity.com/about-fidelity/overview.

8. Defendants provide retirement planning, portfolio guidance, brokerage services and banking services to individual account holders. Defendants serve their customers online, over the phone, and through investor centers at places open to the public.

9. Defendants are private entities that own, operate, and/or lease a nationwide network of investor centers, one of which is located in Washington, D.C. at 1900 K Street, NW, Washington, D.C. 20006.

10. Defendants provide bank wire services where account holders can transfer money into and out of banking, brokerage, mutual fund, or retirement accounts via bank wire.

11. Defendants hold out their services to 23 million individual investors, including District of Columbia residents, who need banking and investment assistance.

## FACTUAL ALLEGATIONS

12. Mr. Mitchiner is deaf. He is substantially limited in the major life activities of hearing.

13. In 2011, Mr. Mitchiner opened an account with Defendants. Mr. Mitchiner has a checking account, savings account, retirement account, and a credit card account with Defendant.

### A. 2012 Bank Wire Transfer Request

*i. Initial Contact with Jaime Nguyen via Fidelity's Website*

14. On or about November 9, 2012, Mr. Mitchiner contacted Defendants in order to obtain information necessary to process a bank wire from his own account through Defendants' "Chat with a Fidelity Representative" feature on Defendants' website at www.fidelity.com. Mr. Mitchiner needed to wire $4,982.12 from his Fidelity account to Home First Title Group, LLC for the purpose of refinancing his home in Washington, D.C.

15. Defendants' employee, Jamie Nguyen, informed Mr. Mitchiner via the online communications system that Mr. Mitchiner could call in to request and process the bank wire. Jamie Nguyen stated that in order to process the wire, Mr. Mitchiner could either go to the nearest Fidelity branch office to process the wire, or call Defendants' service trading number at 800-544-6666 to do the wire over the phone through the use of a fax.

*ii. First Attempt with Drek Ortiz via VRS*

16. On November 10, 2012, Mr. Mitchiner contacted Defendants via Video Relay Service (VRS) to request the wire transfer.

17. VRS is a form of Telecommunications Relay Service (TRS), regulated by the Federal Communications Commission (FCC). According to the FCC, VRS works as follows: "[t]he VRS caller, using a television or a computer with a video camera device and a broadband (high speed) Internet connection, contacts a VRS CA [communications assistant], who is a qualified sign language interpreter. They communicate with each other in sign language through a video link. The VRS CA then places a telephone call to the party the VRS user wishes to call. The VRS CA relays the conversation back and forth between the parties -- in sign language with the VRS user, and by voice with the called party. No typing or text is involved." *See* Federal Communications Commission, Video Relay Services, *available at* http://www.fcc.gov/guides/video-relay-services.

18. The FCC has promulgated regulations requiring CAs to maintain strict confidentiality of any information exchanged during relay calls and prohibiting CAs from changing the content of the message in any manner. *See* 47 C.F.R. § 64.604(a)(2).

19. Upon calling Defendants via VRS, Mr. Mitchiner connected with Defendants' employee, Drek Ortiz. Mr. Ortiz told Mr. Mitchiner that he could not process the wire transfer over the phone because Mr. Mitchiner had used VRS to place the call.

20. The conversation was escalated to Defendants' supervisor, Ms. Leanne Wormald, who also stated that Mr. Mitchiner could not process the wire transfer over the phone due to the fact that Mr. Mitchiner had used VRS to place the call.

21. Ms. Wormald told Mr. Mitchiner to use an automated verification menu where Mr. Mitchiner could use the phone keypad to input his account information to verify his account.

5

22.     The automated account verification process requires the user to input his Fidelity username and password using the telephone keypad.

23.     Mr. Mitchiner was unable to complete the automated account verification process because it was not compatible with VRS.

24.     If Mr. Mitchiner had been a hearing individual who called over the telephone, he would have been able to complete the wire transfer.

### *iii. Second Attempt with Delius Conaler via Fidelity's Website.*

25.     While communicating with Ms. Wormald through VRS, Mr. Mitchiner started an online chat session with another Fidelity representative, Delius Conaler. Mr. Conaler declined Mr. Mitchiner's request for the wire transfer because Defendants' would not accept a VRS call as a means of verifying the request.

26.     If Mr. Mitchiner had been a hearing individual who called over the telephone, he would have been able to complete the wire transfer.

### *iv. Third Attempt with Tabitha via IP Relay.*

27.     A few hours later on November 10, 2012, Mr. Mitchiner again contacted Defendants via Internet Protocol (IP) Relay to attempt to get the wire transfer processed and was connected to Defendants' employee Tabitha.

28.     IP Relay is a telecommunications relay service that uses the Internet instead of a phone system. Using IP Relay, anyone with a computer with access to the Internet can connect to a communications assistant (CA) using a chat-like window within their browser.

29.     Defendants' employee, Tabitha, informed Mr. Mitchiner that since the requested transfer was for under $15,000, Defendants could process the bank wire transfer via fax.

30. Tabitha informed Mr. Mitchiner that he would need to provide in the faxed request all of the following: Mr. Mitchiner's account number; the amount to be transferred; the file number; and the information of the bank he would like to transfer the money to, including the name or names on the bank account, the account number, routing number and bank federal routing number.

31. Tabitha also informed Mr. Mitchiner that he would need to sign the faxed document, to include a telephone number, as well as the wire group's file number. Tabitha informed Mr. Mitchiner that he could fax the request to Defendants' fax number at 866-625-2740.

### *v. Plaintiff's Discovery of Frozen Account.*

32. On or about November 10, 2012, Mr. Mitchiner sent all of the requested details to Defendants' fax number in order to request and process the bank wire transfer.

33. On November 12, 2012, Mr. Mitchiner discovered that Defendants had placed a hold on his account and that he was unable to get the bank wire transfer because he had communicated with Defendants via relay.

34. If Mr. Mitchiner had been a hearing individual who called over the telephone, he would have been able to complete the wire transfer and not had his account frozen.

35. On November 12, 2012, Mr. Mitchiner contacted Defendants via online chat. Defendants' employee, Mr. Stephen Riggins, informed Mr. Mitchiner via online chat that the risk office would not allow the bank wire transaction to proceed. Mr. Riggins informed Mr. Mitchiner that he was required to go to his local investor center. Mr. Riggins also stated that because bank wires are processed via fax on a case-by-case basis there was no way to appeal Defendants' decision to deny the bank wire.

36. Mr. Riggins reiterated that the only way the matter could be resolved was if Mr. Mitchiner processed the transaction in person at his local investor center.

### *vi. Plaintiff's Fourth Attempt with Sirak Peodros via VRS.*

37. That same day, Mr. Mitchiner called Defendants' branch office, located at 1900 K Street, NW, Washington, D.C. 20006 via a VRS service called Convo VRS. Mr. Mitchiner connected with Defendants' employee, Mr. Sirak Peodros.

38. Mr. Peodros connected Mr. Mitchiner to a risk specialist, who indicated that the hold had been placed on Mr. Mitchiner's account due to his use of relay services.

39. Mr. Peodros stated that the wire could not be completed because Mr. Mitchiner could not verify his account information through the automated account verification system that was incompatible with VRS.

40. The call subsequently escalated to Defendants' branch manager, Mr. Joey Egloff. Mr. Egloff indicated that Mr. Mitchiner had failed to verify his account and could not proceed with the bank wire transfer. Mr. Egloff furthermore stated he could only complete the bank wire request in person with Mr. Mitchiner and that Defendants would not accept the faxed requests for the bank wire transfer.

41. Mr. Mitchiner replied that he could not physically go to a branch office that day because he had a very sick child.

### *vii. Plaintiff Unfreezes Account with Lauren Campbell via IP Relay.*

42. Later that day, Mr. Mitchiner again contacted Defendants' service trading number at 800-544-6666 using a relay service to discuss the fact that Mr. Mitchiner's account was being frozen. Mr. Mitchiner's call connected to Defendants' employee, Ms. Lauren Campbell.

43. Ms. Campbell removed the freeze on Mr. Mitchiner's account, which Ms. Campbell stated would go into effect the next business day. Ms. Campbell stated that Mr. Mitchiner failed the automated account verification process. Ms. Campbell also stated that Mr. Mitchiner's wife, also a holder of the account, needed to sign the letter request.

### *viii. Plaintiff's Formal Complaint and Subsequent Correspondence*

44. Later that day, Mr. Mitchiner sent an email to the Chairman of Fidelity Investments, Edward C. Johnson, III, explaining Defendants' ongoing discriminatory behavior toward him and requesting that such discrimination cease.

45. Although Defendants told Mr. Mitchiner that the wire transfer would be processed the next day, Defendants failed to process the wire transfer, forcing Mr. Mitchiner to physically go to an investor center to complete the bank wire, when a hearing customer would not have had to go into an investor center.

46. On February 1, 2013, Mr. Marc Rademacher, Assistant to the Chairman of Defendants, mailed a letter to Mr. Mitchiner, stating that Defendants impose no additional burdens on deaf customers who contact them through VRS.

### B. 2014 Wire Transfer Request

47. Though Defendants stated that Fidelity's policy is to accept relay calls from deaf individuals without imposing any conditions on them that would not be imposed on hearing individuals, Mr. Mitchiner again encountered discrimination by Defendants on March 24, 2014 when he requested a new bank wire of his own funds.

48. On March 24, 2014, Mr. Mitchiner contacted Defendants at their customer service number, 800-343-3548, via VRS for the purpose of requesting a bank wire of $100,000 of his

funds for a settlement on a property he was purchasing in Delaware. The settlement date was scheduled for March 28, 2014.

49. Defendants' wire center refused to accept Mr. Mitchiner's VRS call.

50. Defendants told Mr. Mitchiner that because he was speaking through an interpreter, Defendants would not be able to process the bank wire.

51. Mr. Mitchiner subsequently asked to speak with a supervisor. Mr. Mitchiner was connected to supervisor Jim Hornburger. Mr. Hornburger explained that the wire center would not speak with Mr. Mitchiner because he was using a relay service.

52. Mr. Mitchiner explained that Defendants previously agreed to accept relay calls and not impose additional burdens on deaf individuals.

53. Despite the fact that Defendants will complete a wire transfer for a hearing customer via telephone, Defendants refused to complete a wire transfer for Mr. Mitchiner because he was calling through relay.

54. Mr. Hornburger informed Mr. Mitchiner that he was not able to comply with Defendants' policy of accepting relay calls because the wire department required Mr. Mitchiner to physically go to an investor center to complete the bank wire.

55. Mr. Hornburger subsequently stated to Mr. Mitchiner that Defendants must receive a letter authorizing Defendants to speak with Mr. Mitchiner through a sign language interpreter, or that Mr. Mitchiner must physically go to the bank branch.

56. Mr. Mitchiner was ultimately forced to physically go to Defendants' investor center in Washington, D.C. to complete the bank wire in person.

57. If Mr. Mitchiner had been a hearing individual who called over the telephone, he would have been able to complete the wire transfer over the telephone.

## COUNT I: TITLE III OF THE AMERICANS WITH DISABILITIES ACT

58. Mr. Mitchiner repeats and realleges all paragraphs in support of this claim.

59. Mr. Mitchiner is substantially limited in the major life activities of hearing and speaking and is therefore an individual with a disability within the meaning of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12102(2).

60. Defendants own, lease, and/or operate a place of public accommodation as defined under Title III of the ADA, 42 U.S.C. § 12181(7)(F).

61. Title III of the ADA prohibits discrimination on the basis of disability in "the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any places of public accommodations . . ." 42 U.S.C. § 12182(a).

62. Pursuant to Title III of the ADA and its implementing regulations, a public accommodation cannot deny participation or offer an unequal or separate benefit to individuals with disabilities. A public accommodation is required to administer its programs and activities in the most integrated setting appropriate to meet the needs of qualified individuals with disabilities. 42 U.S.C. § 12182(b)(1)(A) and (B); 28 C.F.R. §§ 36.202; 36.203.

63. Pursuant to Title III of the ADA and its implementing regulations, a public accommodation must take reasonable modifications in policies, practices, or procedures, when necessary to ensure access for people with disabilities. 42 U.S.C. § 12182(b)(2)(A)(ii); 28 C.F.R. § 36.302(a).

64. Pursuant to Title III of the ADA and its implementing regulations, a public accommodation shall furnish appropriate auxiliary aids and series to ensure effective communication with individual with disabilities. This includes "voice, text, and video-based telecommunications products and systems, including text telephones (TTYs), videophones, and

captioned telephones, or equally effective telecommunications devices." 42 U.S.C. § 12182(b)(2)(A)(iii); 28 C.F.R. § 36.303(b)(1).

65. Pursuant to Title III of the ADA and its implementing regulations, a public accommodation must accept "telecommunications relay service established under title IV of the ADA in the same manner that it responds to other telephone calls." 28 C.F.R. § 36.303(d)(4).

66. Defendants provide telephone banking as one of its services.

67. Defendants have discriminated against Mr. Mitchiner on the basis of his disability by refusing to accept his relay calls to allow business transactions via relay as necessary to ensure effective communication, full and equal access, and an equal opportunity to participate in and benefit from Defendants' services in violation of 42 U.S.C. §§ 12181-12189.

68. Defendants have discriminated against Mr. Mitchiner on the basis of his disability by denying him equal participation in the services, programs, and benefits the Defendants offer to other individuals, and by refusing to reasonably modify its policies, practices, or procedures to accept relay calls, in violation of Title III of the ADA, 42 U.S.C. § 12182.

69. Mr. Mitchiner has experienced injury and continues to experience injury as the result of Defendants' discrimination, namely Mr. Mitchiner has been prevented from accessing and managing his own finances to the same extent as a person with hearing would.

### COUNT II: VIOLATION OF DC HUMAN RIGHTS LAW

70. Mr. Mitchiner repeats and realleges all paragraphs in support of this claim

71. Mr. Mitchiner is a person with a disability as defined by section 2-1401.02(5A) of the Code of the District of Columbia.

72. Defendants own, lease, or operate a place of public accommodation as defined under Section 2-1401.02(24) of the Code of the District of Columbia.

73. The Code provides that: "It shall be an unlawful discriminatory practice . . . (1) To deny, directly or indirectly, any person the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodations." D.C. Code § 2-1402.31(a)(1).

74. Defendants have discriminated and continue to discriminate against Mr. Mitchiner on the basis of his disability by denying him equal access to the services, programs, and benefits that the Defendants offer on the phone to other individuals because Defendants refuse to accept relay calls and allow business transactions via relay in violation of § 2-1402.31(a) of the Code of the District of Columbia.

75. Mr. Mitchiner has been injured and continues to be injured as the result of Defendants' discriminatory policies and actions.

## **RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court provide the following relief:

(a) Issue a declaration that Defendants' policies, procedures, and practices have subjected Plaintiff to discrimination in violation of Title III of the Americans with Disabilities Act and Section 2-1402.31(a) of the Code of the District of Columbia;

(b) Enjoin Defendants from implementing or enforcing any policy, procedure, or practice that denies individuals who are deaf or hard of hearing, such as Mr. Mitchiner, full and equal access to and an equal opportunity to participate in and benefit from Defendants' services or programs;

(c) Enjoin Defendants from implementing or enforcing any policy, procedure, or practice that limits or restricts individuals who are deaf or hard of hearing, such as Mr. Mitchiner, from using relay calls to communicate and conduct business with Defendants;

(d) Order Defendants to develop and comply with written policies, procedures, and practices to ensure that Defendants do not discriminate against Mr. Mitchiner and other similarly situated individuals who are deaf, hard of hearing, or have speech impairments;

(e) Order Defendants to train all representatives/employees about Mr. Mitchiner's rights and the rights of individuals who are deaf, hard of hearing, or have speech impairments, as well as provide training on Defendants' policies and procedures on accepting relay calls;

(f) Order Defendants to list on their website the Defendants' procedures and policies for receiving and accepting phone calls with deaf or hard of hearing individuals.

(g) Award reasonable costs and attorneys' fees;

(h) Award compensatory damages to Mr. Mitchiner pursuant to the DC Human Rights Act;

(i) Award punitive damages to Mr. Mitchiner pursuant to the DC Human Rights Act; and

(j) Award any and all other relief that this Court finds necessary and appropriate.

## JURY DEMAND

Plaintiff Jon Mitchiner, through his undersigned attorneys, hereby demands a trial by jury on all issues so triable pursuant to Federal Rule of Civil Procedure 38.

Respectfully submitted,
/s/ Mary C. Vargas
Mary C. Vargas, Bar No. MD21727
STEIN & VARGAS, LLP
5100 Buckeystown Pike, Suite 250
Frederick, MD 21704
T: (240) 793-3185 F: (888)778-4620
*Attorney for Plaintiff*[1]

---

[1] Attorney for Plaintiff gratefully acknowledges the contributions of the following students from the University of Maryland Francis King Carey School of Law: Samantha Altneu, John Delaney, Connie Lee and Sophia Shuo Tian.